## SARAH D. WORK *vs.* JAMES WALKER.

### October Term, 1873.

CANCELLATION—DEED PERMITTED TO STAND AS SECURITY.—Upon bill filed by a widow to set aside a conveyance of land by her husband and herself as colorable, and the proof showing the payment of a consideration in money, and failing to show fraud in fact on the part of the purchaser, the conveyance sought to be set aside was permitted to stand as security for the money actually paid, and to the extent of the sales made previous to the filing of the bill, and the title to the residue divested out of the defendant and vested in the complainant.

THE CHANCELLOR :—The object of this bill is to set aside a conveyance made by the complainant's late husband to the defendant of certain large bodies of land mentioned in the bill. The grounds upon which the relief is sought are :

1st. That the sale was only colorable, for a fictitious consideration recited in the deeds, and was intended to enable the defendant the more easily to sell the lands in New York, or at other northern points.

2d. That the lands were bought originally with the money of the complainant, and upon a promise by her husband to take the title in her name, which he failed to do, and that the defendant bought with knowledge of her rights.

The burden of proof is upon the complainant to show facts sufficient to satisfy the court that her claim is valid. Upon a careful examination of the evidence, I am clearly of opinion that she wholly fails to establish the first ground relied on. The evidence of the two witnesses, through whom the negotiation with complainant's husband was made for the purchase of the lands by the defendant, is too positive, circumstantial, and clear to leave any doubt on the point, even if the testimony of the complainant was far stronger than it is.

If the complainant's bill can be maintained at all, it is only on the second ground. The proof does conclusively establish that by an antenuptial settlement made between complainant and her late husband, Joseph Work, all her property being a valuable estate, consisting principally of slaves, was

settled to the sole and separate use of complainant, and that upon the death of the trustee named in the marriage settlement, the said Joseph Work was, on the 10th of June, 1850, appointed by the circuit court of this county trustee for his wife under said settlement. The proof is also clear that as early as 1850, Work and his wife had no other property than the separate property in question, which for many years, and up to the late war, brought in a handsome income, and this income the husband seemed to have managed and disposed of as he saw proper. There can be no doubt that the land in controversy was bought with the money derived from the wife's estate. There is proof, also, though far from conclusive, that when the lands in question were bought there was an understanding between husband and wife that the title to the lands was to be taken in her name. If there were nothing else in the case, however, I would have no hesitatation in holding that the proof was insufficient to establish a resulting trust as against the defendant who was a purchaser for value. But the fact is proven by the complainant, and admitted by the defendant, that after the husband had conveyed the lands in question to the defendant, the latter procured the complainant to execute to him a deed for the land in her own name. The reason assigned by the defendant for taking this deed is, that in the Northern states, where he expected to sell the lands, he having bought them for purposes of speculation, the wife is endowable of any lands of which the husband may be seized during coverture, and purchasers in these states might, for this reason, require some evidence that the wife of Work had relinquished all claim to these lands. He admits, however, that he was advised by counsel that such was not the law of this state, and that a conveyance by the husband alone of his land would be good. Moreover, the only legal mode of conveying the wife's interest in her husband's lands, in all those states in which the common law rule of dower right prevails, is by the wife joining her husband in the conveyance, the consideration paid to him being sufficient to sustain the deed. In

this case, the deed taken was by the wife alone, without her husband, upon the recited consideration of ten dollars, without proper probate or registration, and, therefore, void for the purpose assigned. This is a very suspicious circumstance, which is greatly strengthened by the fact that the defendant, whose answer is not sworn to, the oath having been waived by the bill under the statute, has failed to depose to the facts upon which he relies under oath. There are several minor circumstances, outside of the evidence of the complainant and her daughter, tending to throw suspicion over the transaction, and strongly persuasive that the defendant must have known at the time of his purchase of the complainant's claim to the lands, as now set up in her bill. If he did know of her claim, the defendant is not a *bona fide* purchaser from the husband for value and without notice. Nor can he claim as purchaser from the wife, for the consideration recited in the conveyance from her is merely nominal, and not sufficient to sustain a deed for her separate property, even if, as contended for by defendant's counsel, the marriage settlement authorized a conveyance in the mode adopted. I think, however, that the marriage settlement does not clothe complainant during coverture with power to convey as a *feme sole*. The power to " dispose of the property as she may wish," which is given to complainant in the first part of the deed of settlement, means only to give her unlimited control of the property, the latter part of the instrument vesting the trustee with power to " apply " the property for such uses and purposes as she " may demand and require." It is doubtful, whether there is any power of sale vested either in the trustee or the *cestui que* trust, but if there is it can only be with the trustee, or by the trustee upon the demand of the *cestui que* trust. And certainly where the circumstances are at all suspicious, the court would require the power to be exercised only by express reference to the trust.

I am of opinion, therefore, that the defendant cannot insist upon the validity of the title acquired by him. But there is

sufficient doubt in the case, in view of the actual money consideration paid by him, not to set aside the conveyances as fraudulent and void, but to apply the doctrine first laid down in this country by Ch. Kent in *Boyd* v. *Dunlap*, 1 J. C. Rep. 478, and followed by our own Supreme Court in several cases. "There is a marked difference," he says, "between an interference actively to compel a party to re-convey or surrender a deed, and a refusal to aid a party who seeks a specific performance of a contract. If actual fraud be not clearly and satisfactorily made out, the court may refuse its aid, and will not take so decisive a step as setting aside, *in toto*, the title; but will either make it subservient to the equity of the case by allowing the deed to stand as a security for the money actually paid, or leave the party complaining to his remedy at law." An account will be ordered to ascertain the consideration paid by the defendant, and to what extent he has been re-imbursed by sales previous to the filing of the bill, which sales will be allowed to stand, and the land will stand as security for any balance found due him. After re-imbursing him and paying costs, the title to the residue of the lands will be divested out of the defendant, and vested in complainant.